My name is Andrea Miller from the firm Nagley, Meredith & Miller. I'm here for the appellant, although I believe that today's calendar reflects the reverse, so it's an error. Do you want to talk about jurisdiction this morning? Sure, you can start wherever you'd like to. Appellant L. Grove. No, appellant. No, Sacramento. Yes, Sacramento. I'm struggling still with the jurisdictional question. I sort of dumped it on you in my brief. As an old Federal law clerk, having gone through the hazing of the long briefing activity to be asked the question, what was my jurisdiction and why did you write this if I didn't have any, I still struggle with it. The problem, it seems to me, that you have to resolve is the line drawing problem. There is no case that draws a line that would clearly apply to this case. The question is, are you going to find that Congress has the power and the intent to regulate anything, any enterprise, service enterprise, because that's really what we're looking at here, that touches on the carrying on of interstate commerce in any way? It would seem that if a taxicab that goes to the airport touches on interstate commerce sufficiently to have Congress regulate it and place the jurisdiction over it in this Court, every service provider at or near the airport would also be subject to Federal jurisdiction, the people who feed the travelers at the airport, the people who provide the Starbucks coffee none of us can any longer live without. We could not possibly practice our commerce without it. Every hotel would be subject to Federal jurisdiction on the basis of its effect on interstate commerce. So in your heart of hearts, you don't think we have jurisdiction? I beg your pardon? In your heart of hearts, you don't think there's jurisdiction? I don't, and it really bothers me. And, you know, I mean, my only excuse is I did not represent this client in the case below. Well, is it – obviously, this wasn't – we raised it, and there's no evidentiary record on it, only over the pleadings. Is it something that would be better developed by the district court if there was an amendment? I don't think so. I mean, that's sort of where I started to go in the brief. I had very little time to do it because I had been gone. I don't think so because I really do think it's jurisprudential. I mean, I think you have to decide where do I draw this line. And I'm not going to make the slippery slope argument, although I felt myself slipping down it as I was trying to reason through it. So it's a difficult problem, I think, and it has a widespread effect. Your complaint alleges in paragraph 7 and 8 that the Yellow Cab Company of Sacramento is the only authorized provider of taxi cab service to several hotels. The Amtrak Depot, Amtrak maybe once was, but I still think it runs to Reno. No question about it. No question about it. And also to the Sacramento International Airport. The – I think they say on behalf of the county. So I think that they're talking about – Yellow Cab Company of Sacramento has provided on-call service to and from Sacramento International Airport since 1982. You don't think that that's a sufficient allegation to invoke the Commerce Clause regulation? I actually think I would have to look at it again, and I'll try to look at it during my reserve time. I think they mean they have a – to carry county employees, not anybody – they're the only ones who can go to the airport. Every taxi cab company can go to the airport. This is a motion which invokes only what the allegations of the complaint said. Right. I think it's fleshed out in the declarations that were submitted with regard to the summary judgment motion. But, you know, I mean, I think we can almost take judicial notice if you've been to Sacramento that there are more than one cab at the airport. There are many different cabs at the airport. Well, there's an old case. It's a Sherman Act case out of the 40s. The United States Supreme Court rejected – it was the yellow cab case – rejected interstate commerce as including the allegation that if you take people to and from the airport and in connection to interstate commerce, that that would constitute sufficient interstate commerce. Now, I grant you that's Sherman Act. No problem. And, you know, I mean, if a municipal bus was providing service to and from the airport, I mean, we're going to expand the Commerce Clause to cover municipal bus services. It's a difficult question. I don't envy you the struggle. I understand your point of view. Let's turn to the merits. Okay. Let's turn to some other things. I think what I'm going to – because I think the briefing pretty much does it. There are really three issues here. The one is the geographic issue, whether that has an impact in determining genericism of a term. The second major point is what does generic really mean. Your who are you, what are you, what do you do case theory is an interesting one, but it's hard to apply. And I think that the cases that talk more about, like anti-monopoly versus General Mills and CES publishing, make it more clear how the case should be applied in circumstances – especially geographic circumstances like this one. And that is they talk about genericism as whereas trade market protects your good will and your good commercial development and your relationship to your community. Genericism protects the public against a monopoly. In other words, a generic term is one that if it is held only by one producer of a product or deliverer of a service, and it is denied to all others who would like to sell that product or deliver that service, denies them the ability to let the public know what their product is. If you can't call your product shredded wheat, and it is, in fact, shredded wheat, what do you call it? That's the Kellogg case, and that issue is in the Kellogg case. If you can't call your product monopoly, given the fact that everybody understands monopoly means the real estate game, what can you call it? That certainly isn't true in the context of Yellow Cab. Yellow Cab is a very arbitrary name that just designates a recognition in the public when they see the yellow color on the cab, they might want that one rather than red and black, checker, blue and green. This morning I saw one that was Kelly's green cab. Colors are fanciful, basically. It's really a product identifier. It's really a service identifier. The appellee put in the evidence on genericness. I'm not going to go today unless you ask me into the shifting burden. I think that that's complex enough that it's better done on paper. The appellee suggests that his expert resolved the issue with the declaration. The problem with the expert's declaration, again, is that we have this non-national industry. It is clearly not something that crosses State lines on its own. It operates under well-defined State rules of licensing, registration and so on. And it practices in narrow geographical areas. The expert's. Kennedy. Don't you take people to Reno? I beg your pardon? Don't you take people to Reno? There's no evidence of that. And I do not believe that this cab does. There may be cabs that do. I have no evidence of that. And there's your question about do we have to go back to State court? I don't know. If one trip to Reno would do it, maybe we do. And I forgot where I was. This is age, but I'll get back to it. You're talking about the expert's declaration. The expert's declaration really comes up with irrelevant discussions of yellow cab. They don't talk about yellow cab as a service provider or producer, really, in the articles that they're looking at. They talk about this anomaly. They're referring to this anomaly in New York where whether your cab is a checker cab, a blue and white, a city service, whatever the name of your cab is, if it has a yellow medallion, it is a yellow cab, meaning it's a cab that can pick people up on the street. You can hail that cab. That's what it's talking about. It's really a government requirement. It is not a trademark or a use that applies to cabs across the country. It's very unique. And if you look at what he's referring to, it's clear. The Wall Street Journal, the New York Times, he doesn't refer to anything in the Sacramento region. He doesn't refer to anything in California. He doesn't refer to anything in the western United States. It all comes out of this unique registration and qualification system that occurs in New York. Can that kind of a system make a term generic in California? No cases on that. It's not come up. And I would suggest to you it's because this isn't a national industry. The Kendall Jackson case, for instance, is a whole different thing. Everybody that purchases wine sees the grape leaf. Is the grape leaf now generic for wine was the question, at least in the trade dress? And the court said, yeah, it is. Now, you can't copy the way they did it, but you can't prevent other wine producers and distributors from putting it on there as part of their trade dress. That was a national industry. It had a national understanding or an international understanding. They make that clear in the opinion. So the question is, can we import this genericism because there's an understanding in New York, perhaps in London, perhaps in Nebraska? Can we import that to make the term generic in Sacramento and thereby destroy the goodwill of a trade name, which is essentially what you do when you find something generic and deny it protection? You say we can't address the goodwill issue either. Coming down to California, there were lists of all of the yellow cab companies in California. Right. And it seemed that yellow cab of California seemed to be able to operate in the same geographic area, several of them. I don't. This wasn't really well developed below, but I do believe that in the declarations, even though they're what the Court termed partial declarations, which I don't think they are, and I could comment on that as well, that they practice in a way where nobody interferes with anybody else's territory. And it's, as Mr. Plines, Jr. said in his declaration, whenever anybody has wandered into their territory, they've always straightened them out. You know, this is our territory. We have our trade name here. We've established our relationships here, and the line is drawn until this one. As to territorial pickup, not delivery. A cab can go into an area to deliver, but not pick up. Right. Exactly. It's also interesting. Well, now I want to talk for a little bit, unless anybody has any questions about what I've talked about so far? I want to talk a little bit about the Court's finding. I argue in the brief that this is really arbitrary. The Court does what almost all courts have to do, because the distinction between generic and descriptive is so elusive. He assumes arguendo that the matter, that the trade name is descriptive, which would require secondary meaning, and then says that nobody has shown any secondary meaning here. And there I beg to differ again. And I think this is pretty important. I think what he says, you only have partial declarations. If you look at the cases that you decided that talk about partial declarations, I think Filipino is one, in those, when this Court has said partial declarations, what it means is the owner of the company or people associated with the owner of the company have attempted to give their own expert testimony. They have attempted to express the opinion, we have secondary meaning. We are entitled to a trade name. And that's a partial source declaration. The declarations that were submitted below in this case don't do that. What they do is they lay out the facts to demonstrate the widespread development of goodwill. That's a fact. That is not a statement of opinion. Those are facts which are perfectly acceptable coming even from the owner of a business. They point out the number of years that they've been here in Sacramento. They point out the number of contracts they have. They point out the relationship that they've developed with vendors of rooming houses and various and sundry businesses to show their goodwill, to show that they have developed the goodwill which is functionally equivalent to secondary meaning in most of the cases, that if you have established yourself and this community in general, maybe not the particular person standing on a street corner watching Cavs go by and trying to decide which one to hail, but the people who are the real users of the service identify you with that name because you developed the goodwill. That's secondary meaning. Kennedy. I have a question. Counsel, with respect of the claim partial source declarations, was there an objection by your opponent at the trial court that the declarations impermissibly stated opinion and therefore? No. I think he just used the term partial source. I think he just used the term partial source. That's argument rather than objection? Yes.  Thank you. Would they seek a ruling to strike the declarations on the basis that it was inadmissible expert opinion? Not that I have seen. Many of the cases in this Court and other courts talk about how you can also show that it's not generic because the intruder into your goodwill or market area does so with the intent to mislead. If they feel the intent to mislead, that is some evidence that there's goodwill that's protectable, that there's secondary meaning in the community. In this case, if you look in the excerpt of record on page 79 and page 81, where we've got the telephone directories, you will see that Elk Grove of Sacramento operated in the year 2000-2001 under the name Co-op Cab. And you can tell that by looking at the telephone number that they were using. In the year 2002-2003, when they changed their name to Yellow Cab, they used the same telephone number as their business number, but they become Yellow Cab. They were certainly not locked out of the market by any monopolistic use of a generic term. If you look at those telephone directories, not only will you see a Yellow Cab designation in Sacramento for as many years as they put the books in, 20-some years, you will also notice that there are many, many other cab companies of many, many other names. They're not locked out of competition. The fact of the matter is that as I read these cases and they talk about generic being the anti-monopoly, trademark being the reward for goodwill, for the generation of goodwill, there could be no question that unless you buy this New York concept, this company had tremendous goodwill, had built it up over a long period of time, met many of the characteristics that you list in your cases. They advertised, they did everything they could, over 700 contracts in a very limited jurisdiction, that they had goodwill to protect. And I'll stop there and say the rest of my time. Very good. Thank you. Good morning, Your Honors. Jeff Kravitz on behalf of Yellow Cab of Elk Grove. First, on the issue of jurisdiction, yes, of course, the Commerce Clause affects hotels. It's called Heart of Atlanta Motel. I cited it in my brief on jurisdiction. There's no question about it. Yes, of course, the Commerce Clause affects people who are involved in transportation. I didn't cite it in my brief, but of course, it's called San Antonio Municipal Transit District v. Garcia, in which the United States Supreme Court said that Federal law governs how people who are working for a city-owned bus company are paid. Presumably, the people on that city-owned bus company only lived in San Antonio and didn't leave the area of San Antonio. We would be turning the Commerce Clause upside down. The appellant can go to the other side. I didn't find any Lanham Act cases that really bore on this. Oh, I cited a Lanham Act case. The Larry Harmon case is exactly on point. And there's no question about it. The Commerce Clause, the extent of the trademark protection is coextensive with the protection under the Commerce Clause. And in this case, this isn't even a close case on this issue. Here we have a company that is directly involved in interstate commerce. They transport the intra the their business is transportation. In the recent Morrison case, on the four areas where there's no question that there's jurisdiction, the first two involve transportation. Indeed, even before Wickard v. Filburn and those cases, transportation was an area where Commerce Clause jurisdiction was always found. Moreover, in the excerpt of the record, you will see that on pages between excerpt of the record 118 to 126, there were five or six trademarks that have been granted to companies that use Yellow Cab as part of the name on the Federal Register. But there's a difference between the Federal trademark when the mark is federally registered. You agree with that? Go ahead. My point is those marks are federally registered. They're used only in one area. But they're able to meet the Commerce the Commerce Clause standard under the Trademark Act is the same to get a registration or to have jurisdiction in court. The registration gives you certain protections when you're in court. But to argue whether the court has jurisdiction, you simply show that you're using your mark in commerce. And the commerce in this case, they're certainly using it. It is economic activity that you're using. I grant you if you have a federally registered trademark, then there's no question about jurisdiction. But we don't have a federally registered trademark here. Well, they can evoke the jurisdiction of this Court under the Lanham Act without having a federally registered trademark. There's dozens of cases on that issue. There's no question about it. All they have to show is the mark is used in commerce. This is a mark that is clearly being used in commerce. And as I've said in my brief, to hold otherwise would essentially overturn Heart of Atlanta Motel and Katzenberg v. McClung, in which Ali's Barbecue, which served 200 people a week, was found to be involved in interstate commerce enough to have the Federal civil rights laws attached to it. So there's no question about it, in my opinion. And I believe this Court will hold the same way. Moreover, on the other hand, the Supreme Court's pronouncement, 47, that the Federal civil rights law was not in effect, that the Yellow Cab in Chicago wasn't engaged in interstate commerce under the Sherman Act. When did this case come down? Sorry? When was this case involved? 1947, Sherman Act case. Okay. I don't know why they would make that determination at that time, and I don't think it's jurisdictional. First of all, that came before Heart of Atlanta Motel. Oh, sure. And Morrison upholds Heart of Atlanta Motel. Nothing, even though the plaintiff cited it, has resurrected Schecter Poultry. The direct indirect effects test is not the law of the United States, and it's never been resurrected. Now the issue of genericness in this case, I think there's some sort of new law being created here in oral argument. It's the fourth or fifth argument that the appellant has made on this point. A term is either generic or a trademark. Every single case says that. There's no cases that say anything else. None. Not one. Now, they are trying to claim, in their briefs at least, that they have some sort of localized use, that a term could be generic, which, by the way, in their brief, they even say, we don't deny it's being used generically in some places. That's the end of the inquiry. That's what this Court said in Filipino Yellow Pages. That's what this Court said in Kendall-Jackson. That's what the Seventh Circuit said in Milmar Shrews. That's the end. Once it's generic, it's over. But let's say we give them the applicability of this Amber Combien-Fitch rule, that maybe something could have some area of the market where it's not generic. Then the burden would be on the plaintiff to show that they have acquired secondary meaning. They didn't present anywhere nearly enough evidence to show that, certainly not under this Court's extremely strict secondary meaning standard that is announced in Japan Telecom versus Japan Telecom, which I cited in my briefs. There's no way that they have met that standard, nor could they meet that standard. Kennedy, what about their frustrated customer's affidavit? Well, this one customer said that one swallow doesn't make a summer. One what? One swallow doesn't make a summer. Well, absolutely not. And the exact same declarations exist in Japan Telecom. One person saying that by the way, the person in their brief never says that they were confused. They said that they noticed there was a distinction between the marks. They didn't know which company it was. Now, he called the wrong company to make a complaint, didn't he? That's the problem with using a generic name. Yellow Cab segment is a generic name. Right, but he was confused. I think it's fair to say that the affidavit indicates he was confused. He called the wrong company. Well, one individual's confusion doesn't make a difference. He didn't know. First of all, there's a distinction between making inquiries and confusion, which has been cited in numerous trademark cases. A mere inquiry is not a position of people being confused. I get calls for the other trademark lawyer, Jeffrey S. Kravitz, sometimes. You know, they don't know which one I am. That doesn't mean anything. In this case here. Just looking at this as a practical matter, I'm here in San Francisco, and I tell my clerk to call me a cab. And when I say Yellow Cab, it's not generic. I want her to call the Yellow Cab Company. Well, how do you know what the Yellow Cab Company is? What do you mean? I know the Yellow Cab. I know DeSoto. I know veterans. But actually, even in the San Francisco Bay Area, there's more than one Yellow Cab Company. So if you were to take that exact instance, this is why it's generic. If you were to travel to Sacramento and you were to call for a Yellow Cab, you would be associating the services you got with the Yellow Cab Company in San Francisco with the services you got in the Bay Area. I know in Seattle, where I live, we have the Yellow Cab Company and we have the Orange Cab Company. But that may be a product of local regulation. Indeed, the Yellow Cab Company of Elk Grove was told that they couldn't have their cab painted fully yellow. It had to be painted yellow and black. And so that's a local regulation. The local regulators would say every cab company has to have this name or that name. But the fact that people call for Yellow Cab in San Francisco is evidence that the term is generic. It is the term that the public associates with taxicab use. To do otherwise would be to simply allow companies to essentially use the bullying aspects of litigation, which is all that's going on here, to try to force competition away from them. There are, I cited in my briefs, over a dozen Yellow Cab Companies in the greater Bay Area. There's absolutely no question about it that they exist side by side all over the place. Well, but they're in San Mateo or they're in Redwood City or they're in San Francisco or they're in Palo Alto. But the term, the exact same thing is true if I call myself, let's say we use any other term. Every single generic term is at one point in the exact same situation. People are claiming that they have some exclusive right to it. People in those areas. So you're saying that you believe your client could use the term Yellow Cab Company of greater Sacramento and that would be just fine. Well, because he's using the word greater Sacramento, there may be somebody say, well, the word Sacramento is used. It would be a separate case. The issue here is whether the term Yellow Cab of Elk Grove, but also under the proposition just brought forward by the judge, this is Yellow Cab of Elk Grove, which is a separately incorporated city in Sacramento, in Sacramento County. It's its own city. Well, does it pick up only in Elk Grove? I'm not certain it might only pick up in Elk Grove, but that would be an issue entirely determined by, and I think it can pick up anywhere in the county because it has a license in the county, by local regulation. The term Yellow Cab absolutely is identified in the public's mind with official taxicab. It's not really that because people don't know how the word Yellow Cab works. But this is identical to the situation Yellow Pages. I want the Yellow Pages. Well, for years there was only one Yellow Page in every jurisdiction. Then people pointed out, hey, Yellow Pages are just a tight color on a page. You have an one company has Yellow Pages here, other companies have it here. Now Yellow Pages is generic so that there are competing Yellow Page companies in the exact same jurisdictions. It's the exact same issue. At one point that wasn't the case. When people realized the mark was generic, and here, by the way, the mark has almost always been generic, the term Yellow Cab in the research that we presented probably developed outside of the United States and was adopted by Hertz to use for his taxicab company. Right. But it was in England, right? It might have been in England. I'm not certain where it originated from. But to allow one company to say we are the Yellow Cab company, the reason the only reason they want to do that is the goodwill the term Yellow Cab has, not in Sacramento, the goodwill Yellow Cab has with Justice Schroeder. Did I get your name correctly there? Fletcher. Fletcher. Fletcher. I'm sorry. I apologize. Justice Fletcher. I apologize there. I'm trying to be cool, but it didn't work. Justice Fletcher has so that she has that goodwill. So they are trying to say to my client here, you can't use the goodwill that we didn't develop. Only we can use the goodwill that we didn't develop. And that goodwill is the nationwide affinity with the term Yellow Cab. A visitor comes to Sacramento from London, lands at the airport, takes a hail of cabs, says, hey, there's a Yellow Cab. He may believe there's an international Yellow Cab company. He doesn't know. He just thinks, oh, Yellow Cab, those are what taxicabs are supposed to be. Takes that cab to the airport, to his hotel. That's why the mark is generic. That's why it's extremely important. Because they're all of those. Well, if you take the so-called swallow affidavit from the one person, he says he's familiar with the Yellow Cab of Sacramento and has positive experience with it past. So he was making a distinction based on his experience with that company, not his experience with the Yellow Cab company in New York. Well, he is, but his one declaration cannot possibly create secondary meaning under the holding of Japan Telecom. It couldn't possibly. In Japan Telecom, there are dozens of declarations. It might create a tribal issue, though. I don't think it's a tribal issue at all. I mean, not if the mark is generic, it's not a tribal issue. The – and first of all, they did not show secondary meaning. So the – exactly under the Filipino Yellow Pages standard, if you – even if the mark's not generic and merely descriptive, the appellant bore the burden. They came to court with no evidence. They've attacked the expert witness report. They didn't have an expert witness report. They didn't have anything. They have nothing to prove that the case – that their – they have secondary meaning or that the mark is non-generic. This is an unregistered mark attacked as being generic. The absolute and only holding of the Ninth Circuit is that the appellant bears the burden. They don't create a tribal issue by presenting one affidavit. If they did, then the holding of Japan Telecom would be wrong. They can't produce it. The holding of Yellow – the holding of Filipino Yellow Pages would be wrong. And those are clear precedents that have happened in law – happened here on this case. It's – there's nothing to try here. The term Yellow Cab is generic. The judge looked at all of the evidence that was there. I mind you that discovery is closed, so at the trial, they couldn't have an expert witness report or any surveys that would show any recognition of Yellow Cab. They couldn't have any other witnesses. I mean, the – that would show it scientifically. All of the evidence was before the judge, and the judge correctly ruled, holding clear Ninth Circuit precedent, that Yellow Cab is generic. And it's very important to many people in this country. I can tell you that this – this decision goes forth that Yellow Cab is generic. All over the United States, large taxi cab companies are doing exactly this. Cities are growing. Counties are growing. People incorporate in other parts of the cities. As the area expands out to new suburban areas. Elk Grove used to be a farm. Is this in the record? Is there anything of what you say in the record? Well, I'm just talking about the – that Elk Grove is an – is an adult city. But in any case, another thing I want to point out, the – the absurdity of the argument being made by the appellant here. Their company, in their pleadings, they show where their company is located. Their headquarters are in West Sacramento. Okay? West Sacramento is in Yolo County. The county seat of Yolo is Woodland. They have – they – there's a Woodland Yellow Cab company. Well, so that's okay. My client is in Elk Grove. I mean, we don't have a map here. The Court could take judicial notice of the distance between these places. It's not very much great. It's not very much greater and whatnot. But they claim there he can't use the mark. That's just because they want to monopolize the business there. They want travelers coming to Sacramento to believe that they are the official taxicab company because they see Yellow Cab. The visitor from New York comes and he sees, oh, Yellow Cab of Sacramento. That must be the only official taxicab company. The others must be gypsy taxicab companies. And that would be their thinking, that the public has to associate Yellow Cab with official cab because everybody does. They think that Yellow Cab is the proper name for taxicabs. It's not the only name. Just like submarine sandwich isn't the only name for a sandwich made like that. You could call them sandwich shop. But if somebody tried to monopolize and say, only I can use submarine sandwich, you'd say, it's generic. And if a mark is generic, Corn Flakes is generic. If they were the only company serving Corn Flakes in Sacramento for 100 years, and Corn Flakes is generic, I can open up my store and sell Corn Flakes right next to theirs tomorrow because the mark is generic. That's not really the analogy. Now, your company could be the purple cab company. Yes. But in other words, the fact that they can compete against them isn't the issue. That's not the issue. That's not the issue in genericness, whether or not it's possible ever to compete against people. Sure, they could use a different name. Yellow Cab is a really good name. It's a generic name that they'd like to use. People could call trampoline something other than trampoline. They could say bouncy structure. But they don't do that because trampoline's the word, which once, by the way, was a registered trademark, I believe, and was found to be generic over the course of time, that people associate with that item. They say that's what it is. So there's no question that if people are associating something with a particular type of product, and in this case, what they're associating with is official licensed taxi cab service, it's not true that it's the only official licensed taxi cab service, but that's what the appellant wants people to believe. They want people to think we're Yellow Cab. The logo and design that they use and the name is exactly the same as is used in dozens of other cities, as you can see from the evidence that we've presented. So there's no real debate in my mind about this fact. You don't have to show that if you don't let people use this mark, there'll be a monopoly in that mark in order to prove something's generic. That's absolutely not the standard at all. All you have to do is show that the public generally associates that mark with it. It is so commonly used in the public that there can be no individual registrants of it. That's what we've shown here. And the most important thing about this is the defendant, the appellee, didn't bear the burden on the issue. This is an unregistered trademark, so the burden to show non-genericness lied completely with the appellant. They didn't meet that burden. They didn't meet the burden of secondary meaning. It's crystal clear that they didn't do that. That's why this wasn't a difficult case for Judge Damrell in the district court, in the Eastern District Court, because it's basically a question of the burdens and the evidence that were shown here. And so, again, I strongly believe that the mark is clearly generic under every single standard of the Ninth Circuit. There would be – I don't think there would be any way to harmonize the holding of Filipino yellow pages with a holding that overturned the district court's decision here, which was based not just that the mark was generic, which it is, but also that if it wasn't generic, they did not have sufficient evidence of secondary meaning. One declaration by one confused person is absolutely not enough to overturn that under the holding of Japan Telecom. It's not enough. It's certainly not enough here. What we have is a classic attempt of somebody who knows the mark is generic using it because it's generic. They want people to think that they are the official taxicab company. That's why they want to use the term, term yellow cap. It's the term the public associates with good taxicabs, not because of their efforts, but because of the efforts of the people in San Francisco, the people in Chicago, the people in New York, and all over the country who have tried to show that we're the only people who can be a taxicab company. This mark is used concurrently throughout the United States. Any staffs that there are that prohibit any company from using the name in one area is a local government decision. It has nothing to do with Federal trademark law. Roberts. Thank you, counsel. Thank you. I'll get my stuff together so I can flee quickly at the end. A couple of points. I think, you know, you really made the point, Judge Thomas, and perhaps you too, Judge Breyer. Now I'm cool. The fact of the matter is that there was, I think, on the issue of or I submit on the issue of secondary meaning, there was sufficient evidence to at least get past summary judgment. The representation here that, well, but it was too late to have an expert and so on, that's fine. You know, in this kind of a situation where you're dealing with the public and the consumption levels, an expert is probably not your best witness anyway. Certainly. How do you distinguish Japan Telecom? You mean the level of proof? Well, those were literally the owners and their friends. They were not users of the product. You pointed out, I believe, that this guy was the guy who said, I've used their services before and I didn't expect this behavior from them and I was angry and I called the yellow cab I know about, and it was the wrong one. That's what you're saying. The distinction, Japan Telecom dealt with partial source declarations. Right. Only. Right. And my other point was that just because it's an owner that writes it does not necessarily make it a partial source if they're stating facts, not opinions. So there are really two concepts there. I didn't – I thought I heard appellant's counsel talk about other States, how everybody in every other State also believes yellow cab is generic for calves. We don't have any evidence of that. What we had was the New York paradigm. And I'm not sure, you know, I mean, if it were purple, then it would be you couldn't have purple calves anyplace else. It's just – it's a very strange basis for deciding the word generic on a national basis, to look at one focus like that, that a person getting off a plane in New York would think that that's a common cab. In New York, they wouldn't see anything but a yellow cab. Here they would see at the curb all these other calves. If they were gypsy calves, they couldn't be at the curb waiting to pick people up. So, you know, I mean, you get into all this kind of cultural stuff that, to me, doesn't have anything to do with the monopoly concept. He said – the appellant's counsel, appellee's counsel said we were saying that something could be generic in one place and not generic in another. That is not our argument. I hope you understand that. We're just saying that you can't use behaviors, cultural behaviors, in one area to make something generic nationally. You have to look at the monopoly concept, as you so aptly noted, Judge Schroeder. This is not – oh, I did, Judge Fletcher. This is not – this is not that kind of a question. It just isn't. So with that, we'll submit and we'll thank you very much for your time. Yes. Thank you both for your arguments. Both briefed and argued with interest. Thank you both. And I'm sure if Chief Judge Schroeder were here, she'd thank you too. Okay. Thank you. Thank you.
judges: B. Fletcher, Thomas, Bea